**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| OMNIA PARTNERS, PUBLIC SECTOR, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CANON SOLUTIONS AMERICA, INC.,<br><br>Defendant. | Civil Action No. 3:25-cv-00947<br><br>Judge Trauger |

**PLAINTIFF OMNIA'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Omnia Partners, Public Sector, Inc. ("Omnia") submits this Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment against Defendant Canon Solutions America, Inc. ("Canon").

1. Omnia is a Delaware corporation, formerly named "National Intergovernmental Purchasing Alliance Company," registered to do business in the State of Tennessee, with its principal place of business at 5001 Aspen Grove Drive, Suite 600, Franklin, Tennessee 37067.

**Citation to the Record:** Am. Compl., ¶ 1.

**RESPONSE:**

2. Canon is a New York corporation with its principal place of business at One Canon Park, Melville, New York 11747.

**Citation to the Record:** Am. Compl., ¶ 2; Ans., ¶ 2.

**RESPONSE:**

3. Omnia administers cooperative purchasing agreements, also referred to as "Master Agreements," throughout the United States.

**Citation to the Record:** Am. Compl., ¶ 4.

**RESPONSE:**

4. Public agencies, through particular "Master Agreements," may purchase goods and services from contracted suppliers.

**Citation to the Record:** Am. Compl., ¶ 5.

**RESPONSE:**

5. Omnia and the supplier enter into an "Administration Agreement" that sets forth the supplier's obligations, including payment of an administrative fee on sales to agencies who utilize the Master Agreement.

**Citation to the Record:** Am. Compl., ¶ 6.

**RESPONSE:**

6. Omnia partners with public entities as "lead" agencies who conduct public solicitations, usually in the form of Requests for Proposal to suppliers, and then award Master Agreements to winning suppliers.

**Citation to the Record:** Ex. A, Omnia Depo., 37:16-38:7, 48:6-12.

**RESPONSE:**

7. Suppliers respond to the Request for Proposal and may negotiate with the lead agency.

**Citation to the Record:** Ex. A, 84:5-14.

**RESPONSE:**

8. Non-lead agencies may purchase under a Master Agreement, which allows them to "bypass the RFP process and buy quicker and still be compliant" with "[s]tate procurement laws."

**Citation to the Record:** Ex. B, Johnson Depo., 29:7-12.

**RESPONSE:**

9. For each Master Agreement, the supplier must enter into a coterminous Administration Agreement with Omnia.

**Citation to the Record:** Ex. A, 87:16-19, 95:23-25, 96:3-4.

**RESPONSE:**

10. Under an Administration Agreement, "[s]uppliers report sales under the contract and then pay the administrative fee due based on those sales that they reported."

**Citation to the Record:** Ex. A, 50:1-3.

**RESPONSE:**

11. It is "fairly typical for suppliers to include exception language in response to RFPs," and "specifically with respect to the administrative fee number or structure."

**Citation to the Record:** Ex. A, 65:1-4.

**RESPONSE:**

12. Where a supplier takes "exception to the proposed administration fee that was listed in the RFP," that exception "doesn't automatically get included" in the Administration Agreement, and Omnia "does not have to approve" the exception.

**Citation to the Record:** Ex. A, 64:21-22, 115:22-23.



Case 3:25-cv-00947 Document 44 Filed 09/29/26 Page 3 of 15 PageID #: 631

**RESPONSE:**

13. In 2008, Canon entered into a Master Agreement with DuPage County, Illinois, and, to administer that Master Agreement, an Administration Agreement with Omnia's predecessor, National IPA (the "2008 DuPage Admin Agreement").

**Citation to the Record:** Ex. C, 2008 DuPage Admin Agreement.

**RESPONSE:**

14. In the negotiations preceding the 2008 DuPage Admin Agreement, Canon sought to exclude the sales of certain items from the administrative fee.

**Citation to the Record:** Ex. D, Canon Depo., 44:1-45:15.

**RESPONSE:**

15. Omnia "wanted [Canon] to include all products and services" in the administrative fee, but Omnia was "not able to negotiate that into this agreement and so it was excluded."

**Citation to the Record:** Ex. E, Brown Depo., 64:22-65:2.

**RESPONSE:**

16. Section 10 of the 2008 DuPage Admin Agreement provides that "[a]dministrative fees will not be payable to National IPA on service, maintenance, supplies, warranties or software maintenance fees purchased by Participating Public Agencies under the Master Agreement."

**Citation to the Record:** Ex. C, sec. 10.

**RESPONSE:**

17. Upon the expiration of the 2008 DuPage Master Agreement, Canon entered into a new Master Agreement with DuPage County in 2013 and, to administer it, a new Administration Agreement with Omnia (the "2013 DuPage Admin Agreement").

**Citation to the Record:** Ex. F, 2013 DuPage Admin Agreement.

**RESPONSE:**

18. In negotiating the 2013 DuPage Admin Agreement, Omnia did "not want to have any exclusionary language in [the] agreement."

**Citation to the Record:** Ex. D, 61:19-25.

**RESPONSE:**

19. According to Canon's Rule 30(b)(6) deponent, "[e]ven though it showed up in the master and [Canon's] responses, that portion right there"—the exclusion—"was asked to be removed."

**Citation to the Record:** Ex. D, 47:11-13.

**RESPONSE:**

20. According to Canon's Rule 30(b)(6) deponent, "[a]s a result, there is no exclusionary language" in the 2013 DuPage Admin Agreement.

**Citation to the Record:** Ex. D, 61:19-25.

**RESPONSE:**

21. Section 10 of the 2013 DuPage Admin Agreement provides that Canon "shall pay National IPA an administrative fee in the amount of [redacted] of the total purchase price paid to [Canon], less refunds, credits on returns, rebates and

discounts, for the sale of products and/or services pursuant to the Master Agreement (as amended from time to time and including any renewal thereof) ('Contract Sales')."

**Citation to the Record:** Ex. F, sec. 10.

**RESPONSE:**

22. When the 2013 DuPage Master Agreement expired, Canon entered into a third Master Agreement with DuPage County in 2018 and, to administer it, the 2018 DuPage Admin Agreement with Omnia.

**Citation to the Record:** Ex. G, 2018 DuPage Admin Agreement.

**RESPONSE:**

23. Section 12 of the 2018 DuPage Admin Agreement provides:

"'Administrative Fee' shall be defined and due to National IPA from Supplier in the amount of [redacted] ('Administrative Fee Percentage') multiplied by the total purchase for products and services by Principal Procurement Agency and Participating Public Agencies pursuant to the Master Agreement (as amended from time to time and including any renewal thereof) ('Contract Sales') and subject to the following:

a. Contract Sales amounts shall exclude refunds, credits on returns, rebates and discounts.
b. To the extent the Supplier offers trade-in allowance programs, Contract Sales shall be calculated using the net purchase price after the trade-in allowance.
c. To the extent the Supplier offers leasing or financing programs itself or through a financing entity, Contract Sales shall be calculated using the sales amount (the purchase equivalent) billed to a financing entity.
d. To the extent the Supplier offers services (being Managed Print Services and professional services only), Contract Sales shall be calculated using the monthly billed amount and shall be paid in arrears."

**Citation to the Record:** Ex. G, sec. 12.

**RESPONSE:**

24. Canon's general counsel, Tony Marino, drafted subsection (d) of Section 12 of the 2018 DuPage Admin Agreement.

**Citation to the Record:** Ex. D, 82:21-83:5.

**RESPONSE:**

25. Mr. Marino told Canon's Paul Murphy, who negotiated the 2018 DuPage Admin Agreement, that "[s]ome day this isn't going to work well" because Canon "wanted the exclusionary language in it so that there would be no amount of doubt."

**Citation to the Record:** Ex. D, 83:14-19.

**RESPONSE:**

26. According to Canon's Rule 30(b)(6) deponent, "[t]his was the final agreed-upon language," and "the agreement would have been better for Canon if it specifically called out the exclusion of service and maintenance, supplies, and software maintenance."

**Citation to the Record:** Ex. D, 83:16-17, 85:11-15.

**RESPONSE:**

27. Section 13 of the 2018 DuPage Admin Agreement provides that Canon "shall provide National IPA with an electronic accounting report monthly, in the format prescribed by National IPA, summarizing all Contract Sales for each calendar month," and that Canon must submit both the accounting report and the administrative fee "by the 10th day of the following month."

**Citation to the Record:** Ex. G, sec. 13.

**RESPONSE:**

28. Section 14 of the 2018 DuPage Admin Agreement provides that a past-due administrative fee shall "bear[] interest at a rate equal to the lesser of one and one-half percent (1 1/2%) per month or the maximum rate permitted by law until paid in full."

**Citation to the Record:** Ex. G, sec. 14.

**RESPONSE:**

29. Section 15 of the 2018 DuPage Admin Agreement provides that Canon "shall maintain an accounting of all purchases made by Participating Public Agencies under the Master Agreement," and gives Omnia the right to "engage a third party to conduct an independent audit of [Canon's] monthly reports."

**Citation to the Record:** Ex. G, sec. 15.

**RESPONSE:**

30. In 2020, Omnia and Canon entered into an Administration Agreement under which Omnia agreed to administer a Master Agreement between Canon and The Regents of the University of California (the "UC Admin Agreement," and together with the 2018 DuPage Admin Agreement, the "Admin Agreements").

**Citation to the Record:** Ex. H, UC Admin Agreement.

**RESPONSE:**

31. Section 11 of the UC Admin Agreement contains the same relevant administrative fee language as Section 12 of the 2018 DuPage Admin Agreement, including subsections (a) through (d).

**Citation to the Record:** Ex. H, sec. 11; Ex. G, sec. 12.

**RESPONSE:**

32. Sections 12 through 14 of the UC Admin Agreement contain the same reporting, timing, and accounting requirements as Sections 13 through 15 of the 2018 DuPage Admin Agreement.

**Citation to the Record:** Ex. H, secs. 11-14; Ex. G, secs. 13-15.

**RESPONSE:**

33. "[M]aintenance, service, supplies, [and] software maintenance" were all items that Canon "offered in the Master Agreements with County of DuPage and the University of California."

**Citation to the Record:** Ex. D, 87:10-11, 22-23.

**RESPONSE:**

34. In 2024, Canon entered into an Administration Agreement with Equalis Group LLC. Appendix C, Section 1 of that agreement excludes "ongoing service charges, software, maintenance, and software as a service" from the administrative fee.

**Citation to the Record:** Ex. I, Equalis Admin Agreement, App'x C, sec. 1; Ex. D, 155:16-24.

**RESPONSE:**

35. In 2025, Canon entered into an Administration Agreement with Bespoke Community Cooperatives, LLC. Section 7(b) of that agreement excludes "from the net price any charges by [Canon] for services, rental support, installation or maintenance of the products or the licensing of any computer software for the products."

**Citation to the Record:** Ex. D, 159:15-160:17; Ex. J, Bespoke Admin Agreement, sec. 7(b).

**RESPONSE:**

36. Canon has not paid an administrative fee on all sales made under the Master Agreements.

**Citation to the Record:** Ex. K, Canon Interrog. Resp. Nos. 5 and 6.

**RESPONSE:**

37. Canon contends that the Admin Agreements required it to pay the administrative fee only on Managed Print Services, professional services, and equipment, and not on all sales made under the Master Agreements.

**Citation to the Record:** Ex. K, Nos. 5 and 6.

**RESPONSE:**

38. In early 2025, Omnia exercised its audit rights under the Admin Agreements.

**Citation to the Record:** Ex. A, 197:4-8; Ex. B, 96:21-97:6.

**RESPONSE:**

39. Omnia's Interrogatory No. 5 asked Canon to "state the total annual gross dollar amount of sales under the Omnia Master Agreements for the services you contend are excluded from the Administrative Fee under each of the Omnia Master Agreements" for the years 2019 to 2025.

**Citation to the Record:** Ex. K, No. 5.

**RESPONSE:**

40. Canon responded that it "cannot answer" Interrogatory No. 5 because its billing systems make it impossible to "retroactively link each maintenance or supplies transaction" to a Master Agreement.

**Citation to the Record:** Ex. K, No. 5.

**RESPONSE:**

41. Canon produced 8.6 million line items of data shortly before the deposition of its Rule 30(b)(6) representative.

**Citation to the Record:** Ex. L, Johnson Aff., ¶¶ 4-5.

**RESPONSE:**

42. Canon's counsel described that data as "consist[ing] of all data from the maintenance database from the beginning of 2019 through July 2025 for sales of maintenance, supplies, and parts to ship-to addresses that were associated at any time with a participating agency address affiliated with an Omnia Master Agreement."

**Citation to the Record:** Ex. M, Badaracco Email.

**RESPONSE:**

43. Canon's counsel further stated that Canon "know[s] that the data include[s] maintenance, supplies, and parts for equipment that was sold or leased directly, without any connection to an Omnia Master Agreement."

**Citation to the Record:** Ex. M.

**RESPONSE:**

44. Canon's Rule 30(b)(6) deponent testified that "[redacted] of the value of the purchase transaction would be roughly right the value of service over a five-year period."

**Citation to the Record:** Ex. D, 211:13-15.

**RESPONSE:**

45. Asked whether Canon could trace which sales were made pursuant to the Master Agreements, Canon's Rule 30(b)(6) deponent testified: "anything in this world can be done. But it will take -- it would take a lot of people."

**Citation to the Record:** Ex. D, 192:9-11.

**RESPONSE:**

46. Canon's Rule 30(b)(6) deponent further testified:

> Q: "But for the purposes of this litigation, Mr. Murphy, it can be done. It would just take a lot of work, a lot of manpower; is that correct?"
>
> A: "That's right." "[Y]eah, there is a method."

**Citation to the Record:** Ex. D, 192:14-18, 194:24-25.

**RESPONSE:**

47. Canon's Rule 30(b)(6) deponent described that method as "a process of taking 3,000 against a million line items and then removing out the transactions that they have with us that aren't run through the agreement, whether they've gone through a Mass PO, done business straight up, legacy agreement to narrow down the transactions that would drop into the bucket of -- of revenue that would be aligned with the purchase transaction that OMNIA has been compensated on."

**Citation to the Record:** Ex. D, 194:8-16.

**RESPONSE:**

48. Canon supplemented its response to Interrogatory No. 5 and stated a figure of $757,400.

**Citation to the Record:** Ex. K, No. 5.

**RESPONSE:**

49. Canon states that the $757,400 figure is "overinclusive," and also states that "there is no way for Canon USA to reliably determine" which sales go with which Master Agreement because Canon "simply does not track the data in the ordinary course of business in a way that would allow for a precise answer to be supplied."

**Citation to the Record:** Ex. K, No. 5.

**RESPONSE:**

50. Canon's Rule 30(b)(6) deponent testified that, as to tracking the data, "somebody has to make the decision": "is this something that we want to do?"

**Citation to the Record:** Ex. D, 197:14-17.

**RESPONSE:**

51. Canon provided data for sales between January 2019 and July 2025. To calculate the August 2025 through July 2026 period, Omnia applied the average percentage of sales reflected in that data (43%).

**Citation to the Record:** Ex. L, ¶¶ 20-23.

**RESPONSE:**

52. Total sales not reported by Canon under the Admin Agreements are $359,836,461, yielding an administrative fee of $7,196,729, plus interest of $4,859,562, for a total of $12,056,291 as of August 10, 2026.

**Citation to the Record:** Ex. L, ¶¶ 20-23.

**RESPONSE:**

53. During the same period, Canon reported sales to Omnia of $466,718,770 across the Admin Agreements and paid administrative fees of $9,334,375.

**Citation to the Record:** Ex. L, ¶ 24.

**RESPONSE:**

Respectfully submitted,

*/s/ Trent Meriwether*
Phillip G. Young, Jr.
John Nefflen
Trent Meriwether
THOMPSON BURTON, PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
615.465.6000
phillip@thompsonburton.com
john.nefflen@thompsonburton.com
trent@thompsonburton.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, on the same day as this filing, a copy of the foregoing was filed electronically with the Clerk's office and, at the same time, served upon all parties using the Court's CM/ECF system.

*/s/ Trent Meriwether*
Trent Meriwether