**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| OMNIA PARTNERS, PUBLIC SECTOR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:25-cv-00947 |
| | ) | |
| v. | ) | Judge Trauger |
| | ) | |
| CANON SOLUTIONS AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Ryan N. Clark, B.P.R. No. 29105424
Henry O. Cashen
LEWIS THOMASON, P.C.
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
(615) 259-1366 (telephone)
(615) 259-1389 (facsimile)
rclark@lewisthomason.com
hcashen@lewisthomason.com

- *and* -

Anthony P. Badaracco (*pro hac vice*)
Julia More (*pro hac vice*)
DORSEY & WHITNEY LLP
1301 Avenue of the Americas
New York, New York 10019
(212) 415-9354 (telephone)
badaracco.anthony@dorsey.com
more.julia@dorsey.com

*Attorneys for Defendant*
*Canon Solutions America, Inc.*

## TABLE OF CONTENTS


**Page**

INTRODUCTION ....................................................................................................1

I. Statement of Facts ....................................................................................................2

II. Argument ....................................................................................................4

A. Choice of Law ....................................................................................................4

B. Summary Judgment Legal Standard ....................................................................................................5

C. Count I should be dismissed in its entirety ....................................................................................................5

D. Count II should be dismissed in its entirety ....................................................................................................7

E. Count III Should Be Dismissed, Because the Administration Agreements Demonstrate that Administrative Fees Are Not Owed on Maintenance ..................9

F. The Parties' Course of Performance Confirms that Administrative Fees Are Never Payable on Maintenance ....................................................................................................10

G. If the Case is Not Dismissed in Full, Omnia's Damages Should Be Capped ........16

1. Omnia Did Not Disclose a Damages Computation or Supporting Evidence Before the Close of Discovery ....................................................................................................17

2. Omnia's Failure was Neither Substantially Justified nor Harmless ...........19

3. Omnia's Belated "Computation" is Not a Computation of Contract Sales and is Not Supported by Any Admissible Evidence .........................20

4. The applicable statute of limitations limit Omnia's damages ....................21

5. Any interest owed under the Administration Agreements is capped .........23

III. Conclusion ....................................................................................................25

## INTRODUCTION

The parties have an unbroken 17-year course of dealing. Although they have signed successive contracts over the years, the agreement is and has always been that Defendant Canon Solutions America, Inc.—now known as Canon U.S.A., Inc., its successor by merger ("Canon USA")—pays administrative fees to Plaintiff Omnia Partners, Public Sector, Inc. ("Omnia") on Canon USA's sales of equipment, professional services, and managed print services ("MPS") to Omnia's public agency partners, but not on sales of maintenance or supplies. Omnia admits that it knew this in 2008 and then again in 2013, when the parties first renewed their written agreement. Omnia had internal discussions about its desire for administrative fees to apply maintenance, but never asked Canon USA to change the arrangement, and Canon USA never acknowledged that anything had changed. Instead, Omnia waited to invoke its audit rights or to file a claim until 2025, while receiving monthly reports and collecting millions of dollars of administrative fees all along. Omnia also admits that Canon USA always provided the monthly reports that the contracts required, in a timely manner, using Omnia's own form. Because Omnia has admitted these key facts (and more, as discussed herein), no trial is needed. Omnia is seeking administrative fees that it is simply not entitled to.

Canon USA moves for summary judgment on several grounds. Most fundamentally, the record clearly shows that the parties had a meeting of the minds that administrative fees would not be owed on maintenance or other ancillary services (which makes sense, because Canon USA has always provided maintenance and those ancillary services without any assistance from Omnia), and which Canon USA has always tracked in a separate database not tied to equipment sales and has billed separately in arrears. By accepting and fully participating in the parties' course of dealing pursuant to that meeting of the minds for more than 17 years, Omnia acquiesced to the course of dealing and waived any argument to the contrary. All claims should be dismissed for that reason.

There are several additional reasons why summary judgment should be awarded in Canon USA's favor. Two of Omnia's three claims (one for injunctive relief, and one for a declaratory judgment) should be dismissed, because there is no freestanding cause of action for injunctive relief and there are no forward-looking disputes that declaratory relief could prevent. Also, Canon USA never made any sales under the 2019 Administration Agreement, which has expired, so all claims should be dismissed to the extent that they seek relief under that agreement.

Finally, Omnia has not provided any admissible evidence of its alleged damages and summary judgment should be granted on that basis as well. And for any claims that the Court might not dismiss, a partial summary judgment award should at minimum cap Omnia's damages.

## I. STATEMENT OF FACTS

Omnia and Canon USA have done business together since 2008. (SUMF ¶¶ 9–10). Omnia is a cooperative purchasing agency; it administers pre-negotiated Master Agreements that allow its public agency partners—namely schools, governments, and non-profits—to purchase goods and services from contracted suppliers. (SUMF ¶ 5). Canon USA sells Canon-brand imaging equipment, including copiers used by business customers. Omnia sometimes provides leads to help Canon USA sell equipment and ancillary services. Some services—specifically, professional services (implementation, training, and other services offered to customers with new equipment) and MPS (a package that includes printing equipment, ink, and any needed service)—are contracted for at the time of sale and billed up front. (SUMF ¶¶ 27, 33, 59). Canon USA also offers break-fix maintenance, toner, and other ancillary services that are *not* contracted for at the time of sale, and that Omnia does not assist in providing. Sales of these services are recorded in a separate database and billed in arrears based on usage data such as meter reads and supplies ordered. (SUMF ¶¶ 56, 59–61).

Omnia is compensated through administrative fees, which Canon USA pays as a percentage of sales to Omnia's public agency partners of equipment, professional services, and MPS. (SUMF ¶¶ 7, 55). That has been the basic structure since the parties' first agreement, in 2008, which expressly excluded service, maintenance, and supplies from the administrative fee. (SUMF ¶¶ 11–12, 15). Canon USA has never paid administrative fees to Omnia on sales of maintenance. (SUMF ¶¶ 16, 56). Omnia's witnesses testified in this case that they would have preferred for Canon USA to pay administrative fees on maintenance, and that they discussed this internally. (SUMF ¶¶ 21). But until 2025, Omnia never asked Canon USA to pay administrative fees on maintenance and never suggested to Canon USA that it believed the parties' agreements required Canon USA to do so. (SUMF ¶¶ 22, 34, 45, 58).

For more than seventeen years, Canon USA reported its sales to Omnia monthly, using reporting forms prescribed by Omnia. (SUMF ¶¶ 49–50). None of those forms asked Canon USA to break out its sales by the category of product or service sold, and Omnia never asked Canon USA to do so. (SUMF ¶¶ 51–52). Until 2025, Omnia never asked for any additional information about any of Canon USA's monthly reports. (SUMF ¶ 52). Its review of those reports consisted of confirming that the fee paid matched the fee reported. (SUMF ¶¶ 53–54). Further, before April 2025, Omnia never exercised its contractual right to audit Canon USA; no one at Omnia even discussed doing so. (SUMF ¶¶ 68–69).

That changed in 2025 when a participating agency informed Omnia that the Canon USA sales Omnia had reported to it were lower than its actual purchases. (SUMF ¶ 70). On April 14, 2025, Omnia invoked its audit rights and engaged an outside accounting firm to conduct the audit. (SUMF ¶ 71). Canon USA responded by providing sales reports and data for 2021 through 2024. (SUMF ¶¶ 72–73). On June 10, 2025, after a call between Omnia personnel and Canon USA's Paul

Murphy, Omnia told the outside auditor to "stand down" on the audit. (SUMF ¶ 74). Two days later, Omnia sent Canon USA a Notice of Breach. (SUMF ¶ 75). This lawsuit followed. *See* ECF No. 1.

## II. ARGUMENT

### A. Choice of Law

Federal courts sitting in diversity must apply the forum state's choice-of-law rules. *Olenik v. Ohio Cas. Ins. Co.*, 114 F.4th 821, 825 (6th Cir. 2024); *Harrison v. Am. Airlines, Inc.*, 760 F. Supp. 3d 545, 556 (M.D. Tenn. 2024). Under Tennessee law, a contractual choice-of-law provision is enforced if: (1) the provision was executed in good faith; (2) the choice of law is reasonable and not "merely a sham or subterfuge"; (3) the chosen jurisdiction has a material connection to the parties' transaction; and (4) the law of the chosen jurisdiction is not contrary to the fundamental policies of Tennessee or any other state that possesses "a materially greater interest and whose law would otherwise govern." *Yang Ming Marine Transp. Corp. v. Intermodal Cartage Co., Inc.,* 685 F. Supp. 2d 771, 780 (W.D. Tenn. 2010) (internal quotation marks omitted); *see also Blackwell v. Sky High Sports Nashville Operations, LLC*, 523 S.W.3d 624, 632 (Tenn. Ct. App. 2017) (citing *Goodwin Bros. Leasing, Inc. v. H & B Inc.*, 597 S.W.2d 303, 306 (Tenn. 1980)).

Here, the parties contracted for Delaware law to govern "any action arising out of or related to" their agreements. (Doc. 18-1 ¶ 23; Doc. 18-2 ¶ 23; Doc. 18-3 ¶ 22.) The choice-of-law provisions in the Administration Agreements are reasonable and were executed in good faith. Omnia is a Delaware corporation, so the designated jurisdiction has a material connection to the parties' transaction. Further, the Administration Agreements containing the choice-of-law provision (which is identical across the three agreements) are based on Omnia's (not Canon USA's) form agreement. *See* SUMF ¶¶ 26, 34, 40. Finally, Delaware law is not contrary to any fundamental policy of Tennessee or any other state that possesses a materially greater interest and whose law

would otherwise govern. For these reasons, this Court should apply Delaware substantive law. But Tennessee law applies to procedural issues. *See generally Standard Fire Ins. Co. v. Chester-O'Donley & Assocs.*, 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998) (differentiating between substantive and procedural law and holding that Tennessee law applied to procedural issues). *See also Templin v. Baier*, No. 3:21-CV-0373, 2024 WL 38296, at *5 (M.D. Tenn. Jan. 3, 2024) (Trauger, J.) (quoting *SunTrust Bank v. Ritter*, No. E2017-01045-COA-R3-CV, 2018 WL 674000, at *4 (Tenn. Ct. App. Feb 1, 2018)).

### B. Summary Judgment Legal Standard

A summary judgment motion asks the court to determine whether "the moving party is entitled to judgment as a matter of law." *Val-Land Farms*, *Inc. v. Third Nat'l Bank*, 937 F.2d 1110, 1113 (6th Cir. 1991) (affirming summary judgment for defendant). Summary judgment is appropriate where a party cannot "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quotation omitted). "Summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . . The Defendant[] need[s] only demonstrate that the Plaintiff has failed to make a showing sufficient to establish the existence of an essential element of [its] claim." *Rice v. PetSmart LLC*, 649 F. Supp. 3d 673, 676 (M.D. Tenn. 2023) (granting defendant's summary judgment motion).

### C. Count I should be dismissed in its entirety.

Omnia's Count I fails to state a cognizable claim. Count I is styled as "Breach of Contract (Injunctive Relief), while Count III is styled as "Breach of Contract (Damages)." *See* AC at 4-6. Count I consists solely of allegations that Omnia has suffered irreparable harm and has no adequate remedy at law, along with the terms of a proposed injunction. It relies entirely on the same three

"Agreements" (the 2018, 2019, and 2020 Administration Agreements between the parties) as Count III. There are no factual allegations within Count I that are not also within Count III.[1]

Count I fails to state a claim; there is no freestanding cause of action for injunctive relief. "Injunctions are a form of relief, not a cause of action." *Quadrant Structured Prods. Co. v. Vertin*, 102 A.3d 155, 203 (Del. Ch. 2014) (dismissing causes of action for injunctive relief because "they seek remedies rather than assert claims"). This matters because a court should only "determine what remedy (if any) it will award after deciding the merits of [plaintiff's] claims, taking into account the wrongs (if any), the nature of the harm, the facts and circumstances, and any other equities of the case." *Id*. *See also Madej v. Maiden*, 951 F.3d 364, 369 (6th Cir. 2020) ("[A]n injunction is a remedy, not a claim."); *Tenn. Riverkeeper v. Waste Connections of Tenn*., *Inc*., 769 F. Supp. 3d 784, 795 (M.D. Tenn. 2025) (Trauger, J.) (the "injunction claim . . . also fails, because a request for an injunction is not a claim, but merely a remedy for a claim.").

Count I also fails on the facts. Omnia's allegations make clear that Count I (just like Count III) not only alleges a breach of the same contracts but is a means to obtaining the same relief—payment of "fees Canon already [allegedly] owes." AC ¶ 25. The only reason (other than those

[1] Additionally, Omnia cannot claim injunctive relief arising under the 2019 Administration Agreement, because the 2019 Administration Agreement (and the Master Agreement between Canon USA and the Region 4 Education Service Center that it incorporated by reference) was never used. *See* SUMF ¶ 37. *See Paul v. Deloitte & Touche LLP*, 974 A.2d 140, 146-47 (Del. 2009) (Superior Court did not err in awarding summary judgment because plaintiff was not entitled to any damages). Specifically, there are three undisputed and indisputable facts that mandate dismissal of the case as to the 2019 Administration Agreement. First, Canon USA never made a sale under the Region 4 Master Agreement and never paid any administrative fees to Omnia under the 2019 Administration Agreement. *See* SUMF ¶ 37. Second, Canon USA never submitted to Omnia any reports of Contract Sales made pursuant to the Region 4 Master Agreement. *See* SUMF ¶ 38. Third, the 2019 Administration Agreement expired in 2024. *See* SUMF ¶ 39. For these reasons, there is no genuine issue of material fact as to whether Omnia is entitled to any relief under the 2019 Administration Agreement. Omnia is not. Count I should be dismissed to the extent that it seeks injunctive relief related to that agreement.

fees) that Omnia offers for why the Court should exercise its equitable powers to enter injunctive relief is because "no amount of money would prevent Canon from again covering up future sales data, leading the parties right back to this Court a second time." *Id*. That argument falls short of creating a genuine dispute for two reasons. First, Omnia admits that Canon USA has timely provided monthly reports of contract sales throughout the parties' relationship, using Omnia's form and completing all data fields requested by Omnia. See SUMF ¶ 48. Second, even under Omnia's liability theory, there would be no future harm for the Court to deter through an injunction. The 2018 and 2019 Administration Agreements have expired. The 2020 Administration Agreement's original five-year term has expired, and a single one-year extension term will soon expire. See SUMF ¶ 44. By February 2, 2027—the trial date in this matter—Canon USA will have no more reporting obligations under any administration agreement with Omnia, so there is no ongoing conduct for the Court to require. So, there is nothing to enjoin, and Count I must be dismissed.

### D. **Count II should be dismissed in its entirety**.

Omnia's Count II should also be dismissed. That count seeks a declaratory judgment as to whether administrative fees apply only to goods (which is not in dispute) or whether they also apply to "managed print services, professional services, and other service offerings." AC ¶ 28. Omnia claims that declaratory relief will "clarify the scope of Canon [USA]'s fee payment obligations and obviate further uncertainty or future disputes. That is incorrect, for two fundamental reasons.

First, Count II mischaracterizes the scope of the dispute. Canon USA concedes that administrative fees are owed on sales of managed print services and of professional services, and there is no dispute that Canon USA has in fact paid administrative fees to Omnia on sales of those services, which are contracted for at the time of an initial equipment sale, which are explicitly discussed in the Administrative Fee sections of the Administration Agreements between Omnia

and Canon USA, and which are specifically provided for in the 2018 and 2020 Master Agreements between Canon USA and Omnia's lead agency partners. *See* SUMF ¶¶ 25, 27, 30, 35, 41. The only category of services that Canon USA contends are not subject to administrative fees payable to Omnia are maintenance and other ancillary variable services (like the provision of toner) that are not contracted for at the time of an equipment sale, are not mentioned in the Administration Agreements between Omnia and Canon USA, and are not specifically provided for in the 2018 and 2020 Master Agreements between Canon USA and Omnia's lead agency partners.

Second, a declaratory judgment claim should be dismissed, where "a practical evaluation of the unique facts and circumstances demonstrates that subsequent events have proceeded past the point where a declaratory action continues to serve a meaningful purpose." *Apkudo, Inc. v. FedEx Supply Chain Logistics & Elecs., Inc.*, No. N25C-12-607 SKR CCLD, 2026 Del. Super. LEXIS 439, at *10 (Del. Super. 2026). "Under Delaware jurisprudence, a Court may decline to exercise jurisdiction under the Declaratory Judgment Act where the claim would fail to advance the litigation and instead waste judicial resources." *Id.* This is the case "where the alleged breach has already occurred and the core issues will be fully resolved through parallel, non-declaratory common law claims." *Id.*

The basis for the court's decision in *Apkudo* applies with equal force here. Omnia sues under three agreements: the 2018, 2019, and 2020 Administration Agreements. *See generally* AC. But the 2018 Administration Agreement has expired by its terms. *See* SUMF ¶ 33. The 2019 Administration Agreement was never used and, in any event, has expired by its terms. *See* SUMF ¶ 39. The 2020 Administration Agreement (as extended by single one-year extension term) is set to expire later this year. *See* SUMF ¶ 44. By the earliest possible trial date in this matter, Canon USA will have no more reporting or payment obligations under any administration agreement with

Omnia. Notwithstanding Omnia's request for declaratory relief, this is only a damages case. Even under Omnia's view of the parties' rights and obligations under the agreements at issue, Count III (Omnia's damages claim) would allow for Omnia to obtain complete relief. Count II should therefore be dismissed. *See Apkudo*, 2026 Del. Super. LEXIS at *15 (dismissing declaratory judgment claim).

### E. Count III Should Be Dismissed, Because the Administration Agreements Demonstrate that Administrative Fees Are Not Owed on Maintenance.

Delaware adheres to the "objective theory of contracts," meaning that "a contract's construction should be that which would be understood by an objective, reasonable third party." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (citation modified). Where the contract is clear and unambiguous, courts give effect to the plain meaning of the contract's terms. *Id.* at 1159-60. Courts read contracts as a whole and give effect to every term, avoiding any interpretation that would render a provision mere surplusage. *Id.* at 1159. Where a contract expressly refers to and relies on other agreements, the documents are read together. *See Fla. Chem. Co., LLC v. Flotek Indus., Inc.*, 262 A.3d 1066, 1081 (Del. Ch. Aug. 17, 2021) ("[A]s a general rule, contemporaneous contracts between the same parties concerning the same subject matter should be read together as one contract."). "A contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Id.* at 1080 (citation modified). "It is not the job of a court to relieve sophisticated parties of the burdens of contracts they wish they had drafted differently but in fact did not." *Id.* (citation modified). The interpretation of an unambiguous contract is a question of law that is appropriately resolved on summary judgment. *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 847 n.68 (Del. 2019) (finding that whether a contract is unambiguous is a question of law).

The plain language of the Administration Agreements forecloses Omnia's claim that Canon USA is obligated to pay administrative fees on its sales of maintenance to participating public agencies.[2] Each Administration Agreement specifies that administrative fees are payable on "Contract Sales," which it defines as purchases of "products and services . . . pursuant to the Master Agreement." (SUMF ¶¶ 29, 37, 43 (emphasis added)). The Master Agreements, in turn, identify the products and services that Canon USA offers under them—equipment, Managed Print Services ("MPS"), and professional services—and not one of them identifies maintenance. (SUMF ¶¶ 31, 33, 38, 44). The Administration Agreements, on their face, remove any doubt: in the only provision that addresses which services generate administrative fees, the agreements mention "Managed Print Services and professional services *only*." (SUMF ¶¶ 29, 37, 43 (emphasis added)). Maintenance is neither of those things, and it is not mentioned at all. Because the Administration Agreements, on their face, do not require payment of administrative fees on maintenance, Omnia's claim for such fees fails as a matter of law. And if the Court has any doubt about that conclusion based on the text within the four corners of the Administration Agreements, the parties' unbroken 17-year course of performance confirms it.

### F. The Parties' Course of Performance Confirms that Administrative Fees Are Never Payable on Maintenance.

Under Delaware's Uniform Commercial Code, evidence of the parties' course of performance is always admissible to supplement and provide context for the terms of an agreement, even where contract language is unambiguous. *See* 6 DEL. C. § 2-202 (a) (explaining

---

[2] Canon USA expressly asserted this defense in its Answer to Omnia's Amended Complaint. *See* Answer, Doc. 22 (Oct. 16, 2025), at Third Defense. Additionally, Omnia cannot claim damages arising under the 2019 Administration Agreement, because Canon USA made no sales under the Region 4 Master Agreement and reported no Contract Sales and paid no administrative fees under the 2019 Administration Agreement, which expired on March 1, 2021. (SUMF ¶¶ 39–41); *see supra* n.1. Count III should be dismissed to the extent that it seeks relief related to that agreement.

that when the parties put forth a writing "intended . . . as a final expression of their agreement," its terms "may not be contradicted by evidence of any prior agreement . . . but may be explained or supplemented [b]y course of performance[ or] course of dealing . . .").[3] Where the express, unambiguous terms of a contract do not resolve a dispute, "[c]ourse of performance prevails over course of dealing and usage of trade." 6 Del. C. § 1-303(e)(2). The same is true more broadly under Delaware law—unlike the "private, subjective feelings of the negotiators," which are "irrelevant and unhelpful," "any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement." *PJT Holdings*, *LLC v. Costanzo*, 339 A.3d 1231, 1248 (Del. Ch. 2025); *see also Viking Pump, Inc. v. Century Indem. Co.* 2 A.3d 76, 101 (Del. Ch. 2009) ("any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement"). Here, none of the Administration Agreements expressly addresses maintenance or supplies at all. Because of this, evidence of the parties' course of performance is relevant and admissible.

Under Delaware law, summary judgment concerning the interpretation of even an ambiguous contract term is available where the moving party presents evidence supporting its interpretation of a contract's terms and the opposing party cannot rebut it. *See Eagle Indus. v. DeVilbiss Health Care*, 702 A.2d 1228, 1232-1233 (Del. 1997) ("when there is uncertainty in the meaning and application of contract language, the reviewing court must consider the evidence offered in order to arrive at a proper interpretation of contractual terms. This task may be accomplished by the summary judgment procedure in certain cases where the moving party's record is not *prima facie* rebutted so as to create issues of material fact"); *Talley v. Christiana Care*

[3] As is discussed in more detail *infra*, the UCC applies here because any services provided under the Administration Agreements are ancillary to Canon USA's sales of goods to Omnia's public agency partners.

*Health Sys.*, 2019 U.S. Dist. LEXIS 177273, at *30 n.13 (D. Del. Oct. 9, 2019) (noting that "even if one could conclude that this contractual language is ambiguous (i.e., subject to multiple reasonable interpretations), it would still be appropriate for the Court to resolve the issue here in favor of Defendant's (ultimately superior) position" because the evidence of the agreement's meaning was not disputed). For example, in *Black Diamond Hope House, Inc. v. U & I Invs., LLC*, the Delaware Superior Court emphasized that summary judgment would be appropriate even if the contract were ambiguous because all extrinsic evidence in the record supported the plaintiff's proposed interpretation of the potentially ambiguous clause. 2018 Del. Super. LEXIS 221, at *11-12 (Del. Super. May 22, 2018). Similarly, in *Viking Pump,* the Delaware Chancery Court held that the parties' course of performance supported one interpretation of the contract and was not refuted by sufficient evidence to prevent summary judgment and, as a consequence, granted summary judgment. 2 A.3d at 102.

Here, the following factual propositions are undisputed:

- Canon USA has never, during the parties' 17-year course of dealing, paid administrative fees on sales of maintenance or other ancillary services that are not contracted for at the time of an equipment sale and that are billed separately in arrears. *See* SUMF ¶ 54.
- The Administration Agreements, including the provisions providing that "Contract Sales" (rather than simply all sales of products and services to Omnia's public agency partners), were drafted by Omnia using an Omnia template agreement.[4] *See* SUMF ¶ 48.
- In the process of responding to requests for proposal from Omnia's lead public agency partners in 2008, 2013, 2018, 2019, and 2020, Canon USA always wrote—in language that was incorporated by reference into the resulting contracts between Omnia and Canon USA—that it would only agree to pay administrative fees on equipment sales, i.e., not on maintenance. *See* SUMF ¶¶ 11, 29, 42.
- Omnia's witnesses (including Omnia's 30(b)(6) deponent) admitted that Omnia knew early on in the parties' relationship—including at the outset in 2008, and again in 2013, when the parties signed their second agreement—that Canon USA was not paying administrative fees on

[4] "If a contract is ambiguous, we will apply the doctrine of contra proferentem against the drafting party and interpret the contract in favor of the non-drafting party." *Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010).

maintenance. *See* SUMF ¶ 19. Those same witnesses admitted that, although Omnia discussed the matter internally and wanted Canon USA to pay administrative fees on maintenance, Omnia did not communicate this to Canon USA. *See* SUMF ¶ 20.

- Canon USA's understanding of the parties' agreement was consistent throughout the parties' relationship—that administrative fees were not payable on sales of maintenance or other ancillary services that are not contracted for at the time of an equipment sale and that are billed separately in arrears. *See* SUMF ¶¶ 21, 38.

- Omnia cannot identify any document or communication (other than the Administration Agreements themselves, which Omnia contends support its position) showing that in the 17 years between 2008 and early 2025, Omnia ever asked Canon USA to pay administrative fees on maintenance, nor that Canon USA ever acknowledged that it should do so. *See* SUMF ¶ 23.

- Canon USA's position is not unique and should not be surprising. Canon USA produced in discovery its agreements with two other cooperative purchasing organizations (i.e., Omnia's competitors) showing that Canon USA does not pay those organizations an administrative fee on sales of maintenance. *See* SUMF ¶¶ 62-65.

- Omnia took no action for a minimum of more than a decade, despite having audit rights in every version of the administration agreements between Canon USA and Omnia, and despite being able to file a claim like it eventually did here. *See* SUMF ¶ 23.

- Omnia's witnesses admitted that Canon USA has always reported monthly on Contract Sales using Omnia's form report, which does not distinguish between products, services that are subject to administrative fees, and services that are not subject to administrative fees. *See* SUMF ¶¶ 47-48. Omnia also conceded this point in a sworn interrogatory response. *See* SUMF ¶ 48.

On these facts, there is no dispute that Omnia and Canon USA knowingly engaged in a course of performance of approximately seven years under the Administration Agreements at issue in this case, and a course of dealing of approximately seventeen years including previous agreements, during the course of which Canon USA did not pay administrative fees on maintenance or other ancillary services that are not contracted for at the time of an equipment sale and that are billed separately in arrears.

And in any event, even if the Administration Agreements could be construed as requiring Canon USA to pay administrative fees on maintenance (as explained above, they cannot), Omnia has waived any right to recover them through its acquiescence—over the 17 years between 2008

and 2025—to their non-payment.[5] Acquiescence occurs where a plaintiff "has full knowledge of his rights and the material facts and (1) remains inactive for a considerable time; or (2) freely does what amounts to recognition of the complained of act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved." *Klaassen v. Allegro Dev.*, 106 A.3d 1035, 1047 (Del. 2014). For example, in *Weyerhaeuser Co. v. Domtar Corp.*, the Court granted summary judgment against a plaintiff whose "legal, finance, and human resources departments engaged in a continuous, conscious, and voluntary course of action consistent with [the defendant's] interpretation of [the contract provision at issue] and inconsistent with its own rights" over the course of several years. 204 F. Supp. 3d 731, 743 (D. Del. Aug 31, 2016) *aff'd*, 721 F. App'x 186 (3d Cir. 2018). There is no dispute that, as early as 2008 and then again in 2013, Omnia was well aware that it was not getting fees based on maintenance sales, that it wanted that to change, but that it did not ask Canon USA to make a change—instead, it continued to receive monthly reports of Contract Sales on time and using Omnia's own form, and it received quarterly payments of fees, *for more than a decade*. *See supra*, at 12-13. Omnia continued to operate under the status quo, in which Canon USA did not pay administrative fees on maintenance, from 2008 through early 2025.

Further, assuming arguendo that Canon USA was obligated to pay administrative fees on maintenance sales, Omnia has also waived any right to seek such payment as a result of its conduct,

---

[5] Canon USA expressly asserted this defense in its Answer to Omnia's Amended Complaint. *See* Answer, Doc. 22 (Oct. 16, 2025), at Eighth Defense ("Omnia unreasonably delayed in seeking relief from the Court for (a) more than seven years after Canon USA first allegedly failed to pay administrative fees under the 2018 Administrative Agreement; (b) more than six years after Canon USA first allegedly failed to pay administrative fees under the 2019 Administrative Agreement; and (c) more than five years after Canon USA first allegedly failed to pay administrative fees under the 2020 Administrative Agreement. For the aforementioned reasons, Omnia's claims are barred by the doctrine of waiver, estoppel, and/or laches.").

which unambiguously demonstrates an intent to waive any such right. Under Delaware law, a party asserting waiver must demonstrate the following items based on unequivocal facts:

> (1) there is a requirement or condition to be waived; (2) the waiving party knew of the requirement or condition; and (3) the waiving party intended to waive that requirement or condition.

*In re Coinmint*, LLC, 261 A.3d 867, 893 (Del. Ch. May 10, 2021). When a party is aware of its rights under a contract and intentionally elects not to insist upon them, and accepts a deviation from them without objection, this constitutes a waiver. *Id.* at 893-94. For example, in *Pepsi-Cola Bottling Co. v. Pepsico, Inc.*, parties waived a right to insist upon certain payment terms through years of acquiescence to changes in a contract's terms, in spite of a clause stating that any waiver must be in writing. *See Pepsi-Cola Bottling Co. v. Pepsico, Inc.*, 297 A.2d 28, 33 (Del. 1972) (holding that conduct over "a period in excess of 15 years" indicated an intent to waive the right to fixed price in contract). By the same token, Omnia has engaged in conduct that unequivocally indicates an intent to waive its alleged rights. Prior to the 2013 Administration Agreement being signed, Omnia explored internally changing the terms of the parties' arrangement or insisting that it be paid maintenance fees. *See* SUMF ¶¶ 18-21. It was thus clearly aware that it was not being paid these fees. Omnia thereafter acquiesced to the status quo for more than 13 years. While waiver is frequently a question for the jury, when the evidence permits only one reasonable inference, it can be resolved as a matter of law. *See, e.g., G. M. S. Realty Corp. v. Girard Fire & Marine Ins. Co.*, 89 A.2d 857, 860 (Del. Super 1952) (granting summary judgment on waiver claim because there was no disputed issue of material fact). The facts at issue here present such a standard. Omnia knew about the terms of the contract, and about how it was being paid. It intentionally elected not to raise any issue with Canon USA. Omnia's conduct constitutes an intentional, unequivocal waiver of any alleged obligation for Canon USA to pay administrative fees on maintenance sales. As a consequence, Omnia's damages claim fails as a matter of law.

### G. If the Case is Not Dismissed in Full, Omnia's Damages Should Be Capped.

Omnia has not offered a sufficient basis for its claimed damages. The party seeking damages must prove that its damages are not speculative or uncertain and must provide a basis on which the Court can reasonably estimate the amount owed. *See* Fed. R. Civ. P. 26(a)(1) (requiring a party to provide "a computation of each category of damages claimed by the disclosing party," as well as "the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered"); *LaPoint v. AmerisourceBergen Corp.*, 2007 Del. Ch. LEXIS 131, at *28 (Del. Ch. Sept. 4, 2007); *see also Am. Recycling & Mfg. Co. v. Recycle Sols., Inc.*, No. W2014-01907-COA-R3-CV, 2018 Tenn. Ct. App. LEXIS 475, at *10-11 (Tenn. Ct. App. Aug. 16, 2018) ("Uncertain, contingent, or speculative damages are unrecoverable . . . An award for damages requires proof of damages within a reasonable degree of certainty.").

When a party fails to present evidence sufficient to support a damages claim—where, as here, damages are an essential element of the breach of contract claim—summary judgment is appropriate. *See* Fed. R. Civ. P. 37(c)(1) (where "a party fails to provide information . . . as required by Rule 26(a) the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless"); *Biopharma v. Inhibrx, Inc.*, 2024 U.S. Dist. LEXIS 190199, at *2-3 (D. Del. Oct. 20, 2024) (awarding summary judgment because plaintiff failed to provide evidence from which a factfinder could award a non-speculative amount of damages); *Duncan v. STTCPL, LLC*, 2020 Del. Super. LEXIS 91, at *28 (Del. Super. Feb. 19, 2020) (holding that plaintiff's claim could not survive summary judgment where the record did not sufficiently explain its damages); *see also Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 366-67 (6th Cir. 2010) (affirming summary judgment for the defendant after the district court excluded a lost-profits claim that the plaintiff failed to

disclose during discovery, and recognizing that a party that fails to provide required information may not use that information to support a motion, hearing, or trial unless the failure was substantially justified or harmless); *Kindred v. Nat'l College of Bus. & Tech., Inc.*, No. W2014-00413-COA-R3CV, 2015 WL 1296076, at *19-21 (Tenn. Ct. App. Mar. 19, 2015) (affirming summary judgment where plaintiff's claimed damages were "uncertain and impermissibly speculative as a matter of law."). Because Omnia has failed to present evidence sufficient to support a damages claim, all claims should be dismissed on summary judgment. Alternatively, Omnia's damages should be capped at the maximum possible amount submitted by Canon USA.

1. *Omnia Did Not Disclose a Damages Computation or Supporting Evidence Before the Close of Discovery.*

Omnia did not disclose a damages computation or supporting evidence before the close of discovery. In its Rule 26(a)(1) initial disclosures, Omnia did not provide a computation of any category of damages. It stated only that its damages consist of an amount "[i]n excess of $10,000,000" and that "[a] complete computation will be available upon [Canon USA]'s production of relevant service sales numbers." (SUMF ¶ 74). A bare dollar figure, coupled with a promise to calculate damages later, does not satisfy Rule 26(a)(1)(A)(iii). *See Bessemer & Lake Erie R.R. Co.*, 596 F.3d at 366-68. Omnia's disclosures did not identify any category of damages, the method by which any amount was or would be calculated, or any document or other evidentiary material on which a computation was based.

Canon USA then asked Omnia directly. On March 6, 2026, Canon USA propounded Interrogatory No. 17, which asked Omnia to:

> [s]ubstantiate the allegation in Paragraph 21 of the [Amended Complaint] that 'As a direct and proximate result of Canon's conduct, Omnia has suffered and will continue to suffer damages in an amount to be determined at trial,' including by identifying categories of damages that Omnia claims to have suffered, taking into account and explaining any portion of administrative fee revenue paid by Canon USA that Omnia is obligated to pass on to its public agency partners.

(SUMF ¶ 74). Omnia's response did neither of the things the interrogatory requested; it did not provide the categories of damages claimed, and it did not explain what portion of the administrative fees Omnia is obligated to pass on to its public agency partners. Instead, Omnia stated only that "[e]very time that Canon refuses to pay Omnia the Administrative Fee on sales of Canon's services, Omnia is damaged by that amount, plus interest allowed in the agreements," and that "every time Omnia fails to receive the Administrative Fee on the sale of Canon's services, Omnia faces potential liability from other entities expecting a rebate of that fee from Omnia." (SUMF ¶ 74). That response restates Omnia's theory of liability without computing anything. Further, it introduces an additional, unquantified category of claimed harm ("potential liability from other entities") for which Omnia has *never* offered any computation, any supporting document, nor any evidence that such liability exists at all.

Omnia did not supplement either response before fact discovery closed on May 28, 2026. (SUMF ¶ 79). Omnia's deadline to disclose experts passed the same day, and Omnia disclosed none. (SUMF ¶ 76). Canon USA's expert deadline followed on June 29, 2026. (SUMF ¶ 75).

Despite bearing the burden of proof, Omnia did not attempt to cure this deficiency—by supplementing, or by asking the Court for leave to do so after the close of discovery, or by proposing to meet and confer with Canon USA, or by taking any other steps—until after Canon USA raised it. On August 18, 2026, Canon USA wrote to Omnia regarding the deficiencies in Omnia's initial disclosures and interrogatory responses. (SUMF ¶ 81). On August 31, 2026—more than three months after the close of fact discovery and after every expert deadline had passed—Omnia served amended initial disclosures and supplemental interrogatory responses containing, for the first time, a purported damages computation. (SUMF ¶ 82). A supplement served months after discovery has closed, in response to the opposing party's deficiency letter, is not a timely

supplement under Rule 26(e). *See EEOC v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 795 (E.D. Tenn. July 7, 2016) ("In determining whether a supplement is timely, courts have considered that parties generally have a thirty-day window to respond to discovery requests . . . Courts are likely to determine that a party violated Rule 26(e) when the party supplemented disclosures or responses are after the discovery deadline in the case.") (collecting cases). Omnia has not met its burden to prove its damages.

2. *Omnia's Failure was Neither Substantially Justified nor Harmless*.

In assessing whether a failure to disclose was substantially justified or harmless, courts consider: the surprise to the party against whom the evidence would be offered; the ability of that party to cure the surprise; the extent to which allowing the evidence would disrupt the trial; the importance of the evidence; and the non-disclosing party's explanation for its failure to disclose the evidence. *See Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015). Each factor favors exclusion.

Canon USA conducted all fact discovery—including the depositions of Omnia's Rule 30(b)(6) designee and fact witnesses—with only Omnia's unexplained assertion that its damages exceeded $10,000,000. Omnia provided no calculation, identified no damages categories, did not explain how it accounted for fees passed through to public agency partners, and disclosed no supporting evidence. (SUMF ¶ 74). Omnia did not provide its first computation until after fact discovery closed and after Canon USA's expert deadline, leaving Canon USA no opportunity to test Omnia's methodology, examine Omnia's witnesses about it, or retain an expert to rebut it. (SUMF ¶ 82). Curing the prejudice now would require reopening fact and expert discovery, with attendant delay of the dispositive motion schedule and trial.

Further, Omnia has offered no justification for its failure, and its own initial disclosures foreclose one. Omnia represented that "[a] complete computation will be available upon [Canon

USA]'s production of relevant service sales numbers." (SUMF ¶ 74). Canon USA, however, produced the data (subject to objections about its relevance and overbreadth) on May 5, 2026—more than three weeks before the close of fact discovery. (SUMF ¶ 77). Omnia's August 31 computation is based entirely on that production, but Omnia did not supplement its disclosures when it received the data, did not do so before discovery closed, and did not do so until nearly four months later after receiving Canon's deficiency letter. (SUMF ¶ 82). A party that receives the very information it said it needed, allows the deadlines to pass, and discloses its theory only after the opposing party points out the deficiency cannot show substantial justification.

3. *Omnia's Belated "Computation" is Not a Computation of Contract Sales and is Not Supported by Any Admissible Evidence.*

Even if the Court were to consider Omnia's untimely August 31 disclosure, it would not save Omnia's claim. Omnia's "computation" does not attempt to identify maintenance sales made pursuant to an Omnia-administered Master Agreement. It simply treats every transaction in Canon USA's May 5, 2026 data production as a Contract Sale on which a fee is owed. (SUMF ¶ 83). But that data set was not limited to Contract Sales under the Master Agreements. As Canon USA explained on multiple occasions (including in a sworn interrogatory response), that data set contained all maintenance and supplies sales to any customer with a ship-to address that was, at any time, affiliated with an Omnia-administered Master Agreement. (SUMF ¶ 79). Canon USA explained to Omnia that a single customer may have multiple ship-to locations and equipment acquired under more than one Master Agreement or outside of any Omnia-administered agreement (SUMF ¶ 62), and Canon USA does not record, in the ordinary course of business, whether a maintenance transaction relates to equipment sold or leased under the DuPage or UC Master Agreements. (SUMF ¶ 61). Payments received for maintenance are recorded in a separate database from the sale of equipment, professional services, and MPS and are not tracked by any possible

connection to such sales. (SUMF ¶ 57). Omnia's approach therefore necessarily includes sales that are not Contract Sales under *any* reading of the Administration Agreements, and that are necessarily not subject to administrative fees payable to Omnia.

Omnia has disclosed no evidence—no witness, no document, and no expert analysis—that would permit a factfinder to separate maintenance sales associated with equipment acquired under the Master Agreements from those that are not. Canon USA's own corporate witness testified that Canon USA could not make that determination despite "a tremendous amount of effort," because doing so accurately would require reviewing at least "three-quarters of a million . . . line items of [service] transactions" annually across approximately 3,500 customers. (SUMF ¶¶ 63, 80). Omnia has no expert to perform that analysis (SUMF ¶ 78), and no lay witness could offer it.

Canon USA, on the other hand, has offered—along with the underlying computation—its "good-faith best estimate of the total dollar volume of sales of maintenance and supplies between October 1, 2018 and December 31, 2025 that were billed in arrears for equipment that was purchased or leased pursuant to the Omnia Master Agreements": $37,869,976 (2% of which is $757,400). (SUMF ¶ 80). This is the sole evidence in the record to support a non-speculative damages award. Therefore, if Omnia's claims are not dismissed in their entirety, the Court should hold, as a matter of law, that Omnia may not seek damages exceeding $757,400 plus interest. (And, as explained in the next section, the number should be smaller than that because many sales included in that number fall outside of the statute of limitations.)

*4. The applicable statute of limitations limit Omnia's damages.*

Delaware applies a three-year statute of limitations. *See* Del. Code Ann. tit. 10, § 8106 (1974). Where a valid contractual choice-of-law provision states that another state's law will govern disputes arising out of the contract, U.S. district courts seated in Tennessee have found that the other state's statute of limitations can apply. *See Universal Coin & Bullion, Ltd. v. FedEx Corp.*,

971 F. Supp. 2d 754, 765 (W.D. Tenn. 2013) (assuming that the Texas statute of limitations would apply in a contract dispute where the contract had a valid Texas choice-of-law provision); *Khan v. Lincoln Ben. Life Co.*, No. 3:05-0771, 2006 WL 1006804, at *4 (M.D. Tenn. Apr. 14, 2006) (finding that the Indiana statute of limitations applied because the life insurance policy had a valid Indiana choice-of-law provision). Given the valid Delaware choice-of-law provisions in each of the contracts at issue here, the Delaware three-year period applies. For this reason, Omnia cannot claim any damages for any alleged failure to pay administrative fees on or before July 18, 2022 (three years before July 18, 2025, when Omnia filed its original complaint in this action).

In the alternative, if this Court were to find that Tennessee's statute of limitations applies, Tennessee's version of the UCC (like Delaware's) imposes a four-year statute of limitations on sales of goods, and this is the limitations period that would apply in Tennessee. *See* Tenn. Code. Ann. tit. 47, § 47-2-725. It is indisputable that the Administration Agreements at issue here are ancillary to Master Agreements pursuant to which Canon USA sold equipment to Omnia's public agency partners.[6] After all, administrative fees payable to Omnia at issue are calculated as a percentage of the value of the physical copiers and other equipment sold by Canon USA to Omnia's public agency partners. *See* SUMF ¶ __. That is the core Canon USA business that is the subject of the Master Agreements. Any provision of maintenance and supplies on the copiers sold under the Master Agreements is no more than ancillary to the sale of the goods. Under these

---

[6] In its partial motion to dismiss, Canon USA stated that the four-year UCC statute of limitations may apply but that this determination would require the Court to consider additional documents that are not attached to or incorporated into the complaint. *See* Doc. 14, at 7 n.4. Those additional documents—including the Master Agreements between Canon USA and Omnia's lead public agency partners—are now in evidence. Canon USA then expressly asserted this defense in its Answer to Omnia's Amended Complaint. *See* Answer, Doc. 22 (Oct. 16, 2025), at Ninth Defense ("Omnia's claim for damages is partially time-barred due to the expiration of the statute of limitations.").

circumstances, the 4-year UCC statute of limitations applies to Omnia's claims. *See Audio Visual Artistry v. Tanzer*, 403 S.W.3d 789, 803 (Tenn. Ct. App. 2012) (noting that the nature of the seller's business—performing installation and service work incidental to the sale of components—weighed in favor of the application of the UCC); *see also id.* at 804 (observing that equipment constitutes 82% of the total contract price, which also "weighs heavily in favor of a finding that the contract was primarily for the sale of goods"). *See also Surplus.com*, *Inc. v. Oracle Corp*., 2010 U.S. Dist. LEXIS 136254, at *12-13 (N.D. Ill. Dec. 23, 2010) (noting that, in a contract requiring a supplier to provide software and maintenance, software was clearly "the predominant purpose of the relevant agreements . . . with labor incidentally involved") (quotation omitted).

Tennessee is an "occurrence rule" jurisdiction, meaning that a cause of action for breach of contract accrues "as of the date of the breach." *Individual Healthcare Specialists, Inc.*, 566 S.W.3d at 709, 715 (quotation omitted) ("damages resulting from . . . underpayment before . . . six years prior to filing suit[ ] must be dismissed as untimely"); *see also Collins v. Summers Hardware & Supply Co.*, 88 S.W.3d 192, 198 (Tenn. Ct. App. 2002) ("[W]hen a promissory note is payable in installments, an action may be maintained for each installment when it becomes due, and the statute of limitations begins to run from that time."). That means that any quarterly payment of administrative fees that Omnia claims should have included additional amounts to include maintenance sales, but that falls outside of the statute of limitations period, should be excluded. For these reasons, if Delaware's three-year statute of limitations does not apply, then Omnia cannot claim any damages for any alleged failure to pay administrative fees on or before July 18, 2021 (four years before July 18, 2025, when Omnia filed its original state court complaint in this action).

*5. Any interest owed under the Administration Agreements is capped.*

Although Delaware's substantive law applies to this dispute pursuant to the parties' choice of law, Tennessee law applies to procedural issues. *See generally Standard Fire Ins. Co.*, 972

S.W.2d at 5; *Templin*, 2024 WL 38296, at *5. There is a split among jurisdictions as to whether the calculation of prejudgment interest is procedural or substantive for conflict of law purposes, and "Tennessee courts have not definitively spoken on the issue." *Bristol Anesthesia Servs., P.C. v. Carilion Clinic Medicare Res., LLC*, 2:15-CV-17, 2018 U.S. Dist. LEXIS 99075, at *4-6 (E.D. Tenn. June 13, 2018); *see also World Classic Prods. v. RFD-TV The Theater, LLC*, 498 S.W.3d 874, 879 n.1 (Tenn. Ct. App. 2016) ( "express[ing] no opinion in that regard"—*i.e.*, whether the court "consider[ed the] issue of prejudgment interest either substantive or procedural for purposes of conflicts of law").

Tennessee's interest statute is not discretionary—the maximum interest rate under a written contract is determined by a formula rate that is fixed by statute and that the Court should apply without discretion. *See* TN Code § 47-14-103(2). For the purpose of calculating the cap on any prejudgment interest that may be available to Omnia, this statute is therefore procedural, rather than substantive, and the Court should follow the line of cases concluding as much. *See Maddox v. Am. Airlines, Inc.*, 298 F.3d 694, 698 (8th Cir. 2002) ("Oklahoma courts consider prejudgment interest to be procedural only, and not a substantive right. . . . [, b]ecause prejudgment interest is recoverable by statute as a cost of litigation, it is not an element of damages under Oklahoma law."); *Zaretsky v. Molecular Biosystems, Inc.*, 464 N.W.2d 546, 548-51 (Minn. Ct. App. 1990) (holding, as a matter of first impression, that prejudgment interest is procedural for choice-of-law purposes because it "promotes the early settlement of cases between litigants" and predicting that its characterization "may soon become the majority rule"); *N. Bergen Rex Transp. v. Trailer Leasing Co.*, 158 N.J. 561, 565 (1999) ("Although New Jersey courts will uphold the contractual choice of law if it does not violate New Jersey's public policy, because the award of attorneys' fees and interest is a procedural rather than a substantive law issue, New Jersey law applies."). Because

Tennessee's prejudgment interest statute is procedural, and because Tennessee law applies to procedural issues in this dispute, Tennessee's statutory interest rate cap applies to any damages that Omnia might seek to recover in this dispute. As a result, if Omnia were to be entitled to prejudgment interest, it would not be calculated at 1.5% monthly (or 18% yearly)—it would instead be calculated at Tennessee's much lower formula rate pursuant to TN Code § 47-14-103(2).

## III. CONCLUSION

For the reasons stated herein, Canon requests that the Court grant Canon USA's motion and dismiss this case in its entirety or, in the alternative, that the Court order that:

1. Count I is dismissed because it does not state a cognizable claim.
2. Count II is dismissed because there are no future disputes to prevent.
3. All counts are dismissed to the extent that they seek relief under the 2019 Administration Agreement.
4. Count III should be dismissed because the Administration Agreements do not provide for payment of administrative fees on maintenance.
5. Count III should be dismissed because Omnia has failed to prove damages with any specificity.
6. Because Omnia failed to provide a basis for the Court to calculate its damages, even if the case is not dismissed in full, Omnia's damages should be capped at $757,400, subject to adjustment based on the statute of limitations.
7. The Delaware three-year statute of limitations applies to this dispute, or, alternatively, the UCC four-year statute of limitations applies to this dispute.
8. Tennessee's maximum rate of interest calculated on written contracts caps the interest that Omnia may seek.

Dated the 29th day of September, 2026.

Respectfully submitted,

LEWIS THOMASON, P.C.

By:/s/ Ryan N. Clark
Ryan N. Clark, B.P.R. No. 29105424
Henry O. Cashen
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
(615) 259-1366 (telephone)
(615) 259-1389 (facsimile)
rclark@lewisthomason.com
hcashen@lewisthomason.com

- *and* -

DORSEY & WHITNEY LLP

By:/s/ Anthony P. Badaracco
Anthony P. Badaracco (*pro hac vice*)
Julia More (*pro hac vice*)
1301 Avenue of the Americas
New York, New York 10019
(212) 415-9354 (telephone)
badaracco.anthony@dorsey.com
more.julia@dorsey.com

*Attorneys for Defendant*
*Canon Solutions America, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing Memorandum has been served upon the parties in interest herein by ECF notification:

Thompson Burton PLLC
Phillip G. Young, Jr.
John Nefflen
Trent Meriwether
6100 Tower Circle, Suite 200
Franklin, TN 37067
Telephone: (615) 465-6000
Email: phillip@thompsonburton.com
john.nefflen@thompsonburton.com
tmeriwether@thompsonburton.com

*Attorneys for Plaintiff Omnia Partners, Public Sector, Inc.*

Dated the 29th day of September, 2026.

*/s/ Ryan N. Clark*
Ryan N. Clark